D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ANTHONY GREENE, MONIFA GREENE, KWANE
GREENE, YASIN GREENE, MESSIAH GREENE, and
BLACKSUN GREENE,

                                Plaintiffs,

                -against-

THE CITY OF NEW YORK, SERGEANT EREK
POWERS, POLICE OFFICER MARK XYLAS,
POLICE OFFICER RYAN GALVIN, POLICE
OFFICER ROMANDO JULIEN, and POLICE OFFICER
VAUGHAN ETTIENNE,

                              Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CV-6436 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Six Plaintiffs, who are immediate family members,[1] bring this action pursuant to 42

U.S.C. § 1983 and various New York State laws against six Defendants: five New York City

Police Department ("NYPD") officers[2] (the "Officer Defendants") and the City of New York

(the "City"). (Am. Compl.) Plaintiffs' claims arise out of an encounter with the officers that

began with the execution of an arrest warrant for Yasin Greene and led to all five male Plaintiffs

being arrested, with criminal charges being brought and then dismissed against four of them.

(Am. Compl. ¶¶ 1-51.) Plaintiffs bring Fourth Amendment claims for unlawful entry and search

of their home; false arrest and imprisonment; malicious prosecution; and excessive force; as well

as state tort claims for assault and battery; negligent retention, training, and hiring; intentional

---

[1] Plaintiffs include Anthony and Monifa Greene and their sons Kwane, Yasin, Messiah, and Blacksun.
(Am. Compl. (Dkt. 17) ¶¶ 7-14.)

[2] They are: Sergeant Erik Powers, Officer Mark Xylas, Officer Ryan Galvin, Officer Romando Julien, and Officer
Vaughan Ettienne. (Am. Compl. at 1.) Plaintiffs' original complaint named the NYPD as a defendant (Compl.
(Dkt. 1)), but Plaintiffs omitted it from their amended complaint (Am. Compl.).

infliction of emotional distress; and libel and slander. (Am. Compl. ¶¶ 52-111.) Further, Plaintiffs contend that the constitutional violations they suffered were the result of municipal customs and procedures, such that the DOE is liable under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).

Defendants now move for summary judgment on each of Plaintiffs' claims. (Mot. for Summ. J. ("Mot.") (Dkt. 46).) For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Allegations

The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they submitted. (See Defs. R. 56.1 Statement ("Defs. 56.1") (Dkt. 47); Pls. Response Pursuant to Local R. 56.1 ("Pls. 56.1") (Dkt. 51).) All evidence is construed in the light most favorable to the non-moving party with "all reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (internal quotations and citation omitted).

On August 29, 2014, Defendant Officer Galvin arrested an individual who is not a party to this litigation. (Defs. 56.1 ¶ 4.)[3] The individual (whom Defendants describe as a confidential source) informed the Officer Defendants that illegal firearms were being sold out of 377 MacDonough Street ("377 MacDonough") in Brooklyn, New York.[4] (Id. ¶ 5.) When the Officer Defendants searched a law-enforcement database for 377 MacDonough, they found an

---

[3] The court cites to paragraphs of Defendants' Local Rule 56.1 statement only where Plaintiffs do not dispute the assertions therein, unless otherwise noted. See E.D.N.Y. Civ. R. 56.1(c).

[4] Plaintiffs dispute Defendants' claim that the source identified Anthony Greene by name. (Pls. 56.1 ¶ 5.)

outstanding New York City Criminal Court warrant for the arrest of a "Ya Greene."[5]  (Defs. 56.1

¶¶ 7-9, 11.)  Plaintiffs argue that Yasin Greene could not have been identified from the warrant

because it did not list his full name or his race; however, it did list his correct date of birth and

approximate height and weight.  (Compare id. ¶ 10, with Pls. 56.1 ¶ 10.)

The Officer Defendants arrived at 377 MacDonough to execute the arrest warrant and

follow up on the confidential tip.  (Defs. 56.1 ¶¶ 14-15.)  There are two doors to the house: an

outer metal door and an inner wooden door.  The outer door opens to a hallway, while the inner

door opens directly into the home.  (Dep. of Anthony Greene ("A. Greene Dep.") (Dkt. 49-6) at

21:22-22:4.)  The outer door was unlocked on the day of the incident, but it is unclear whether

the inner door was locked.  (See id. at 23:24-24:20.)  All six Plaintiffs were inside the house

when one of the officers knocked.  (Defs. 56.1 ¶¶ 18-19.)  Anthony Greene, who was closest to

the door, asked: "Who is it?"  (Id. ¶ 18.)  According to Plaintiffs, the officers then forcibly

entered the house, breaking the lock mechanism on the inner door in the process.[6]  (A. Greene

Dep. at 23:11-24:8.)

Once the officers were inside the inner door, they grabbed Anthony Greene and asked

which Plaintiff was "Ya" Greene.  (Defs. 56.1 ¶ 27; Pls. 56.1 ¶ 27.)  Yasin Greene identified

himself to the officers.  (Defs. 56.1 ¶ 28.)  The officers placed him in handcuffs and displayed

their warrant, at which point Messiah Greene began filming the incident on a cell phone.

(Id. ¶¶ 26, 29-30; Pls. 56.1 ¶¶ 26, 29; see generally Video (Dkt. 57).)  Monifa Greene touched

Yasin Greene's wrist for several seconds and said to the Officer Defendants, "You're not taking

---

[5] The warrant stemmed from an unrelated incident and alleged disorderly conduct, a violation.  (See Warrant of
Arrest for Ya Greene (Dkt. 49-3).)  See N.Y. Penal Law § 240.20.

[6] Plaintiff Anthony Greene alleged the door was broken in his deposition testimony.  (A. Greene Dep. 23:11-21.)
Plaintiffs also submitted photos of the doorframe, but they were taken more than three years after the incident.  (See
Photograph of Door Exterior (Dkt. 53-23); Photograph of Door Interior (Dkt. 53-24).)

my son." (Video at 00:28-00:30; Pls. 56.1 ¶¶ 37-39.)  Next, the officers escorted Yasin Greene

outside and into an unmarked police car down the block.  (Defs. 56.1 ¶¶ 31-32.)  Other than

being handcuffed and escorted, Yasin Greene had no physical contact with the officers and

sustained no injuries.  (Id. ¶¶ 33-35.)  The other five Plaintiffs stepped into the yard[7] outside of

the house as the officers escorted Yasin Greene.  (Pls. 56.1 ¶ 36.)

      According to Plaintiffs, the Officer Defendants then crowded Monifa Greene to prevent

her from further touching Yasin Greene, and then at least two of them shoved her while she was

standing at least 12 feet away from Yasin Greene.  (Defs. 56.1 ¶¶ 41-43; Pls. 56.1 ¶¶ 41-43.)  She

claims no physical injuries.  (Defs. 56.1 ¶ 44.)

      While Officers Xylas and Galvin led Yasin Greene to the vehicle, Officers Julien and

Ettienne remained in the yard.  (Pls. 56.1 ¶¶ 47, 49.)  An officer instructed Plaintiffs not to leave

the yard.  (Defs. 56.1 ¶ 47.)  Messiah Greene repeatedly insisted that the officers get out of his

yard.  (Video at 1:03-1:19.)  Officer Julien refused to do so, saying, "Put me out."  (Id.; Dep. of

Officer Julien (Dkt. 49-13) at 52.)  Once Yasin was inside the vehicle, Kwane and Messiah

Greene left the yard and approached the vehicle.  (Defs. 56.1 ¶ 52.)  Officer Xylas stepped in

front of Kwane Greene and told him to "cross the fucking street."  (Id. ¶¶ 51, 54, 56; Pls. 56.1

¶ 54.)  Kwane Greene did not cross the street, stating that he would not do so because he was

"going to the store," and then approached within a couple of feet of the vehicle.  (Defs. 56.1

¶¶ 57, 61.)  When Kwane Greene attempted to pass by Officer Xylas, Officer Xylas shoved him

against a car and placed him under arrest with the assistance of Officer Julien by pulling Kwane

---

[7] The yard is a small space outside of Plaintiffs' three-family house, a few feet wide, separated from the sidewalk by
a metal gate.  (See Video at 00:45.)

Greene's arms behind his back. (Id. ¶¶ 63-68.) Kwane Greene suffered soreness in his right arm that lasted for a day, but did not seek medical treatment. (Id. ¶¶ 69-70.)

Messiah Greene observed Kwane Greene and Officer Xylas arguing. (Id. ¶ 76.) Messiah Greene ran toward the two of them and continued recording the incident. (Id. ¶ 84; Pls. 56.1 ¶ 84; Video at 1:20-1:32.) In doing so, Messiah Greene approached within three-to-five feet of Kwane Greene and inserted himself between Officer Xylas and Kwane Greene. (Defs. 56.1 ¶ 85.) Sergeant Powers claims to have believed that Messiah Greene was attempting to interfere with Kwane Greene's incipient arrest. (Id. ¶ 88.) Sergeant Powers then grabbed Messiah Greene from behind, placed him in a chokehold, kicked his legs out, and slammed him to the ground. (Id. ¶ 87; Pls. 56.1 ¶ 87.) Messiah dropped the cell phone with which he had been recording. (Video at 1:35-1:40.) He suffered back pain, but did not seek medical treatment. (Defs. 56.1 ¶¶ 90-91.)

As Sergeant Powers handcuffed one of Messiah Greene's wrists, Anthony Greene approached them and took hold of Messiah Greene's shoulders before the sergeant could handcuff the other wrist.[8] (Id. ¶¶ 93-95.) Anthony Greene asked why Messiah Greene was being arrested. (Id. ¶ 98.) Sergeant Powers claims that he believed that Anthony Greene was attempting to interfere with Messiah Greene's arrest. (Id. ¶ 100.) While the Officer Defendants assert that Anthony Greene's conduct made it difficult for Sergeant Powers to arrest Messiah Greene, Plaintiffs counter that Messiah Greene weighed only 120 pounds and the Officer Defendants (except for Sergeant Powers) weighed around 250 pounds, and Plaintiffs add that the arrest occurred without incident. (Compare id. ¶¶ 99, 101, with Pls. 56.1 ¶¶ 99-100.) Per

---

[8] Plaintiffs purport to dispute this version of events, but do not provide any evidence that calls this account into question, and Messiah Greene's deposition testimony corroborates that one of his wrists was not handcuffed when Anthony Greene took hold of him. (Dep. of Messiah Greene (Dkt. 49-8) at 47:7-21.)

Plaintiffs, Anthony Greene backed away from Messiah Greene voluntarily when asked to do.
(Pls. 56.1 ¶ 101.) The Officer Defendants then finished handcuffing Messiah Greene. (Defs.
56.1 ¶ 104.)

What happened next is heavily disputed. The Officer Defendants claim that when
Sergeant Powers and Officer Xylas attempted to arrest Anthony Greene, he failed to comply with
their instructions and, weighing 300 pounds, was too large to subdue. (Id. ¶¶ 105-10.)
According to the Officer Defendants, when they were unable to handcuff Anthony Greene,
Sergeant Powers gave Anthony multiple verbal warnings and then tased him. (Id. ¶¶ 111-12,
117.) After the first charge, Defendants say Anthony Greene fell to the ground with two officers
holding his arms. (Id. ¶¶ 118-20.) But the officers were still unable to subdue him. (Id. ¶¶ 121-
22.) In order to place Anthony Greene in handcuffs, Sergeant Powers tased him two more times,
and the officers were finally able to pull his hands behind his back. (Id. ¶¶ 123-24.) Apart from
three cycles of the taser, the officers say they used no force against Anthony Greene and called
an ambulance for him immediately. (Id. ¶¶ 125-26.)

Plaintiffs tell the story differently. According to them, Anthony Greene was talking to
another officer with his arms outstretched and palms facing out in a "surrender" gesture when
Defendant Powers tased him without warning. (Pls. 56.1 ¶¶ 105, 112.) Plaintiffs note that
Anthony Greene had been diagnosed with a number of medical conditions, including heart
disease and diabetes, before the date of the incident. (Id. ¶ 107.) Further, Plaintiffs contend that
the Officer Defendants threw him to the ground after he was tased (Pls. 56.1 ¶ 118), and no
officer held Anthony Greene as he fell to the ground (id. ¶ 119). While Anthony Greene
convulsed on the ground, Plaintiffs say Sergeant Powers deployed the taser two more times
before attempting to handcuff him. (Id. ¶ 121.) Next, Plaintiffs allege, Anthony Greene was

placed in a police car to await the ambulance and was pressed against the seat while the taser

barbs were still embedded in his back, thereby bending the barbs and requiring medical

professionals to dig them out later. (Id. ¶ 125.) When he found himself unable to move, either

because of the repeated shocks or his medical condition, an officer slammed the car door on his

legs, causing bruising. (Id.) In addition to the aforementioned injuries, Plaintiffs claim Anthony

Greene sustained a diabetic ulcer on his foot as a result of being shackled to a hospital bed for

nine days. (Id.)

While the Officer Defendants were handcuffing Anthony Greene, Blacksun Greene

approached Sergeant Powers to ask why this was happening. (Defs. 56.1 ¶¶ 128-29.) When

Blacksun Greene, who was fifteen at the time, came within arms' reach of Sergeant Powers, the

sergeant struck him in the head with his hand, knocking him to the ground, and then handcuffed

and arrested him. (Id. ¶¶ 130-31; Pls. 56.1 ¶¶ 129, 133.) Plaintiffs insist that Blacksun Greene

was only trying to bring Anthony Greene his heart medication, while Defendants aver that

Blacksun Greene had been yelling at the officers. (Compare Defs. 56.1 ¶ 129, with Pls. 56.1

¶ 130.) Afterward, Blacksun Greene did not seek medical treatment for any injury. (Defs. 56.1

¶¶ 132, 134.)

After Yasin, Kwane, Messiah, Anthony, and Blacksun Greene were taken away, Officer

Ettienne, Officer Xylas, and Sergeant Powers searched 377 MacDonough Street. (Id. ¶ 141.)

Defendants contend that Monifa Greene signed an unconditional Consent to Search Form

(Consent to Search Form (Dkt. 49-14)) after being told that the officers had received a tip about

illegal firearms at 377 MacDonough. (Defs. 56.1 ¶¶ 135-40.) Plaintiffs counter that as soon as

Anthony Greene was tased, the officers conducted an initial search of the house without

permission while they kept Monifa Greene outside.[9] (Pls. 56.1 ¶ 135.) Per Plaintiffs, only after

the initial search yielded a syringe (for Anthony Greene's insulin) and a marijuana cigarette did

the officers present Monifa Greene with the Consent to Search Form, and they never mentioned a

tip about an illegal firearm. (Id.) Regardless, it is undisputed that the officers obtained the

signed Consent to Search Form from Monifa Greene. (Defs. 56.1 ¶¶ 139-42.)

The officers then searched Anthony and Monifa Greene's bedroom. (Defs. 56.1 ¶ 142.)

Plaintiffs claim that the officers entered the bedroom while Monifa Greene was getting dressed

and refused to leave while she was changing. (Pls. 56.1 ¶ 142.) There was a safe in the

bedroom. (See Defs. 56.1 ¶ 144.) The officers called Anthony Greene to ask where the key to

the safe was; he offered suggestions as to places where it might be, but the officers could not find

it. (Pls. 56.1 ¶¶ 143.) The officers then cracked the safe using a hammer they found in the house

and discovered an unlicensed firearm and 115 rounds of ammunition.[10] (Defs. 56.1 ¶¶ 142-44,

146-150; Pls. 56.1 ¶¶ 143.) Anthony Greene later admitted that he received the firearm from his

father-in-law, did not have a license for it, and had stored it and the ammunition in that safe. (Defs.

¶¶ 155-58.)

After these August 29, 2014 arrests, charges were brought against Kwane, Anthony,

Yasin, and Messiah Greene. (Defs. 56.1 ¶¶ 159-166.) Defendant Xylas issued Kwane Greene a

summons to appear in New York County Criminal Court for disorderly conduct, which alleged

that he had been "yelling and screaming" and trying to push past Officer Xylas while Yasin

Greene was being arrested. (Defs. 56.1 ¶¶ 160, 162; Criminal Complaint (Dkt. 49-17) at 1-2.)

---

[9] It should be noted that Monifa's father and uncle were upstairs in the house during the incident. (Dep. of Monifa Greene (Dkt. 49-10) at 33.)

[10] Anthony Greene had received the firearm from his father-in-law. (Defs. 56.1 ¶ 155.)

On his court date, Kwane mistakenly went to the wrong court and had still not answered the summons as of the filing of the instant motion. (Defs. 56.1 ¶¶ 162-64.)`

On August 30, 2014, Anthony Greene was charged with four offenses relating to his conduct during the incident and his possession of the unlicensed firearm. (Id. ¶ 165.) On March 27, 2015, these charges were dismissed pursuant to speedy-trial laws. (Id. ¶ 166.)

Yasin Greene was also initially charged with criminal possession of a weapon in the second degree for his father's firearm, obstruction of governmental administration, and resisting arrest, but the Kings County District Attorney declined to prosecute. (Kings County Declined Prosecution Form (Dkt. 53-15).)

Blacksun Greene, who was a juvenile at the time, was held at the precinct and released several hours later without charge. (Pls. 56.1 ¶¶ 131-32.)

### B.   Procedural History

Plaintiffs commenced this action on November 10, 2015, initially bringing nine counts on behalf of all Plaintiffs and including the NYPD as a Defendant. (Compl.) Plaintiffs later amended their complaint, removing the NYPD as a defendant and revising several of their claims. (Am. Compl.) On April 19, 2018, in anticipation of Defendants' summary-judgment motion, Plaintiffs withdrew a false-arrest claim as to Yasin Greene and malicious-prosecution and libel-and-slander claims as to all Plaintiffs except Anthony Greene and Kwane Greene. (See Pl. Apr. 19, 2018 Letter (Dkt. 36).) At that point in the litigation, Plaintiffs maintained five sets of federal and six sets of state claims. (Am. Compl. ¶¶ 52-111.)

On July 16, 2018, Defendants filed the instant motion for summary judgment on all claims. (Mot.) In their opposition brief, Plaintiffs appear to have abandoned three of their claims: (1) federal and state malicious prosecution of Kwane Greene, (2) excessive force as to Yasin Greene, and (3) libel and slander. (Pls. Mem. in Opp'n to Mot. for Summ. J. ("Opp'n")

9

(Dkt. 52); <u>see</u> Reply in Supp. of Mot. for Summ. J. ("Reply") (Dkt. 54) at 7, 8, 14 (pointing out

that Plaintiffs failed to defend these three claims).)  A "partial opposition" to summary judgment

"may imply an abandonment of some claims or defenses." <u>Jackson v. Federal Exp.</u>, 766 F.3d

189, 196 (2d Cir. 2014).  Absent evidence to the contrary, the court treats these claims as

abandoned.  <u>See id.</u> ("Generally . . . a partial response reflects a decision by a party's attorney to

pursue some claims or defenses and to abandon others.").  That leaves Plaintiffs with five sets of

federal claims and five sets of state claims.

Plaintiffs' federal claims, pursuant to 42 U.S.C. § 1983, are as follows: against the

Officer Defendants, (1) unlawful entry and search of 377 MacDonough; (2) false arrest of

Kwane, Messiah, Anthony, and Blacksun Greene, and false imprisonment of Monifa Greene;

(3) malicious prosecution of Anthony Greene; and (4) excessive force as to all Plaintiffs but Yasin

Greene.  Against the City, Plaintiffs bring (5) a <u>Monell</u> claim for § 1983 liability.  (<u>See</u> Am. Compl.

¶¶ 51-73; Opp'n at 11-31.)

Plaintiffs' New York state-law claims are as follows: Against the Officer Defendants,

Plaintiffs allege (1) assault and battery of all Plaintiffs, (2) malicious prosecution of Anthony

Greene, and (3) intentional infliction of emotional distress as to all Plaintiffs.  (<u>See</u> Am. Compl.

¶¶ 84-104; Opp'n at 31-35.)   Against the City, Plaintiffs (4) allege negligent retention, training,

and hiring of the officers and (5) seek to hold the City liable for the Officer Defendants' alleged

torts under a theory of <u>respondeat superior</u>.  (<u>See</u> Am. Compl. ¶¶ 74-83, 105-111.)

## II.   LEGAL STANDARD

The court will grant summary judgment if Defendants can show "that there is no genuine

dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Roberts v. Azize</u>, 767 F. App'x 196, 197 (2d Cir.

2019) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). But "a party's affidavit may not create an issue of fact by 'contradicting the affiant's previous deposition testimony.'" Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir. 2014) (quoting Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).

In evaluating Defendants' motion, the court views the evidence in the light most favorable to the Plaintiffs, drawing all inferences and resolving all ambiguities in their favor. Amnesty Am., 361 F.3d at 122. However, Plaintiffs "may not rely on conclusory allegations or unsubstantiated speculation" in their opposition. Nickey v. Carboine, 682 F. App'x 78, 79 (2d Cir. 2017) (summary order) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).

Defendants need not offer evidence to show there is no genuine dispute of material fact on all of Plaintiffs' claims. Instead, where Plaintiffs bear the burden of proof at trial, Defendants may prevail on summary judgment by showing that the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. DISCUSSION

### A. 42 U.S.C. § 1983 Claims

#### 1. Unlawful Entry and Search

##### a. *Unlawful entry*

Plaintiffs argue that the Officer Defendants' entry into 377 MacDonough violated the Fourth Amendment. The court grants Defendants summary judgment on this claim for the following reasons.

##### i. Legal Standard

"Generally, the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect." United States v. Lauter, 57 F.3d 212, 214 (2d Cir. 1995)

(citations omitted).  "As the Supreme Court has observed, once an arrest warrant for a particular suspect has issued, 'it is constitutionally reasonable to require him to open his doors to the officers of the law.'"  Id. (quoting Payton v. New York, 445 U.S. 573, 602-03).  "Agents may enter a suspect's residence, or what they have reason to believe is his residence, in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present."  Id. (citations omitted).

Assuming officers lawfully enter a dwelling, their actions are constitutionally limited. While it is true that "officers may occasionally have to 'damage property in order to perform their duty' . . . unnecessarily destructive behavior may rise to the level of violating the Fourth Amendment."  Figueroa v. Kroll, No. 98-CV-0837 (GBD), 2004 WL 2924492, at *5 (S.D.N.Y. Dec. 16, 2004) (quoting Dalia v. United States, 441 U.S. 238, 258 (1979) (citations omitted)). However, force that is necessary to effect a lawful arrest, and which damages property, does not violate the Fourth Amendment.  See Jackson ex rel. Jackson v. Suffolk County, 87 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) ("[P]laintiff must establish . . . that more than ordinary disarray and damage incident to the execution of the warrant or search occurred." (citations and quotation marks omitted)).

ii.    <u>Application</u>

As Plaintiffs concede (Opp'n at 12), it was objectively reasonable for the Officer Defendants to believe, based on their database search using a tip from a confidential informant, that "Ya Greene" lived at 377 MacDonough.  (See Defs. 56.1 ¶¶ 5, 7-9, 11.)  Thus, the Officer Defendants did not violate the Fourth Amendment by entering the dwelling.  See Lauter, 57 F.3d at 214.

Additionally, contrary to Plaintiffs' argument (Opp'n at 11-15), the manner in which the Officer Defendants entered the house did not violate the Fourth Amendment. Plaintiffs' argument is predicated on the damage that the Officer Defendants did to their inner door's lock mechanism. (See Opp'n at 11-15.) This damage does not meet the threshold of "unnecessarily destructive behavior" that is necessary to support a claim of unlawful entry. (See Photograph of Door Exterior (Dkt. 53-23) (showing minimal damage to the lock mechanism of Plaintiffs' inner door); Photograph of Door Interior (Dkt. 53-24) (same).) See Figueroa, 2004 WL 2924492, at *5; see also Jackson ex rel. Jackson, 87 F. Supp. 3d at 401 ("plaintiff must establish . . . that more than ordinary disarray and damage incident to the execution of the warrant" occurred). Thus, Defendants are entitled to summary judgment.

Plaintiffs also take issue with the duration for which the officers remained in the yard, claiming that this constituted an unlawful entry of the curtilage of the house. (Opp'n at 13-14.) This argument fails for two reasons that are made clear by the video Messiah Greene recorded. (See Video.) First, the yard constitutes "[t]he route which any visitor to [377 MacDonough] would use" to enter and exit Plaintiffs' residence. (See Video at 00:44-00:50.) See United States v. Reyes, 283 F.3d 446, 465 (2d Cir. 2002). The Officer Defendants were in the yard for a "legitimate reason": to complete their arrest of Yasin Greene. See Reyes, 283 F.3d at 465. Therefore, the yard "is not private in the Fourth Amendment sense." Id. Second, the officers remained in the yard for only a few seconds—the amount of time necessary to lead Yasin Greene to the vehicle. (See Video at 00:42-00:48 (during which Yasin Greene was led through the yard and out the front gate).) Two of the Officer Defendants blocked some of the Plaintiffs from leaving the yard as Yasin was led away (Reply at 2), but Plaintiffs cite no authority for the

13

proposition that briefly blocking people from exiting their property to prevent them from interfering with a lawful arrest constitutes an unlawful entry.

In sum, the court agrees with Defendants that the manner in which the officers entered the home, as well as the duration of their stay, were reasonable. No reasonable jury could find that Defendants entered unlawfully by executing the arrest warrant.

### b.    Unlawful search of 377 MacDonough

Plaintiffs also contend that the Officer Defendants' search of 377 MacDonough, which involved them breaking into a safe and finding the unlicensed firearm therein, violated the Fourth Amendment. As set forth below, the court denies Defendants summary judgment on this claim because there is a material dispute as to whether the officers obtained consent to search the house only after an initial, nonconsensual search.

### i.    Legal Standard

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." United States v. Younis, No. 10-CR-813 (JFK), 2011 WL 1485134, at *3 (S.D.N.Y. 2011) (quoting Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curiam)). "However, 'one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.'" Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

> The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. In this circuit, the test is an objective one—whether the agents had a reasonable basis for believing that there was valid consent to the search. In applying this test, it is appropriate to consider the particularities of the situation that is presented in any given case and the possibly vulnerable subjective state of the person who consents. Other relevant factors are whether the defendant was in custody and in handcuffs, whether there was a show of force,

14

> whether the agents told the defendant that a search warrant would be obtained, whether the defendant had knowledge of the right to refuse consent, and whether the defendant previously had refused to consent.

Id. at *4 (citation omitted).

### ii.   Application

Here, it is undisputed that Monifa Greene consented to the portion of the officers' search that yielded the unlicensed firearm and ammunition. (Defs. 56.1 ¶¶ 139-42.) The validity of her signature on the Consent to Search Form has not been challenged. What is at issue is (1) whether Monifa Greene's consent was truly voluntary when she signed the form, and (2) whether the officers conducted a nonconsensual sweep of the house before asking Monifa Greene to sign the form.

As to the first issue of Monifa Greene's consent, Plaintiffs have adduced no colorable evidence that Monifa Greene was under duress when she signed the form. None of the factors articulated in Younis tends toward duress here: the officers made no show of physical force in asking Monifa Greene to sign the form, and it is undisputed that she was aware of the nature of the form (i.e., that if she did not sign the form she would be refusing to consent to a search). The subjective fears Plaintiffs identify, including Monifa Greene's concerns that the food she had been cooking was burning and that she was less than prepared to have left the house in the first place (see, e.g., Opp'n at 15-16), do not speak to whether the officers "had a reasonable basis for believing that there was valid consent," Younis, 10 F. Supp. 2d at 384. Notably, Plaintiffs have not claimed that Monifa Greene communicated any of these fears to the officers when they asked her to sign the form. (See Pls. 56.1 ¶¶ 135-40.) Thus, the Officer Defendants had a reasonable basis for believing her consent was voluntary.

15

Less easily resolved is Plaintiffs' claim that several of the officers conducted an initial, nonconsensual sweep of 377 MacDonough <u>before</u> obtaining Monifa Greene's consent. By Plaintiffs' account, the officers swept through the entire house, recovering a syringe (for Anthony Greene's insulin) and a marijuana cigarette, and only then offered Monifa Greene the form to sign. (Pls. 56.1 ¶ 135.) Defendants' only response is that "Plaintiffs cannot survive summary judgment solely on the basis of Monifa Greene's self-serving deposition testimony that the officers searched 377 MacDonough Street prior to her signing the Consent to Search Form." (<u>See</u> Reply at 3.) But Defendants have it backwards. At the summary judgment stage, it is their burden to produce evidence that there is no genuine dispute of material fact, or to point to an absence of evidence in the record; they have done neither. In contrast, Monifa Greene offered consistent testimony both after the incident and accompanying Plaintiffs' opposition to summary judgment. (<u>See</u> Dep. of Monifa Greene (Dkt. 49-10) at 124-25; Decl. of Monifa Greene (Dkt. 53-2) ¶¶ 28-30.) Thus, there is an issue of fact as to whether the officers obtained the signed Consent to Search Form before or after sweeping the house.

Neither side has addressed the possibility that any initial search of the house would be incidental to the arrests of Yasin, Kwane, Messiah, Anthony, and Blacksun Greene, and therefore privileged. In any case, such a search "may only include the arrestee's person and the area within his immediate control . . . mean[ing] the area from within which he might gain possession of a weapon or destructible evidence." <u>Arizona v. Gant</u>, 556 U.S. 332, 339 (2009) (quotation marks omitted). Because the house does not fall into either of those categories, it was not subject to a search incident to arrest.

Plaintiffs have demonstrated that there is a genuine issue of material fact surrounding a possible initial search of the home <u>before</u> Monifa Greene signed the Consent to Search Form. If

this is the case, then the search was both warrantless and nonconsensual.  Therefore, Plaintiffs'

claim of unlawful search survives summary judgment.

2.     False Arrest/Imprisonment

All Plaintiffs apart from Yasin Greene bring claims of false arrest or false imprisonment.

The court grants summary judgment for Defendants on all but one of these claims.  There was at

least arguable probable cause to arrest Kwane, Messiah, and Anthony Greene for obstruction of

governmental administration, and Monifa Greene was neither arrested nor imprisoned.

However, Defendants nowhere allege that Blacksun Greene engaged in physical interference,

and some physical action is necessary to satisfy the elements of the crime for which he was

arrested.

a.     *False arrest*

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest

under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  The state standard

for false arrest requires "that: '(1) the defendants intended to confine the plaintiff, (2) the plaintiff

was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4)

the confinement was not otherwise privileged.'"  Sethi v. Nassau County, No. 11-CV-6380

(SJF), 2014 WL 2526620, at *3 (E.D.N.Y. June 3, 2014) (alterations adopted) (quoting Jocks v.

Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003)).  Such "privileged" confinement arises if

probable cause to arrest exists, meaning the arresting officer had sufficient knowledge or

information "to warrant a person of reasonable caution in the belief that the person to be arrested

ha[d] committed a crime."  See Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013).  In that

case, a false arrest claim cannot succeed.  See Jenkins v. City of New York, 478 F.3d 76, 84 (2d

Cir. 2007) ("The existence of probable cause to arrest . . . is a complete defense to an action for

false arrest.") (quotation marks omitted).

17

Further, an arresting officer may claim qualified immunity from suit on a claim of damages for false arrest even absent probable cause, "if he can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause, and therefore the officer's qualified immunity, "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (quotation marks omitted).

Defendants respond to Plaintiffs' claims of false arrest by asserting that there was probable cause to arrest Kwane, Messiah, Anthony, and Blacksun Greene for obstruction of governmental administration in the second degree ("OGA"), N.Y. Penal Law § 195.05. This supposed probable cause derives from each Plaintiff's interference with a previous arrest: Kwane Greene with Yasin Greene's arrest, Messiah Greene with Kwane Greene's, Anthony Greene with Messiah Greene's, and Blacksun Greene with Anthony Greene's. Defendants also claim qualified immunity for the Officer Defendants under a theory of arguable probable cause to arrest for OGA. (See Mem. at 11-14.) In response, Plaintiffs generally dispute that there was sufficient probable cause to arrest Anthony Greene and his sons, on the basis that no single Plaintiff's actions during the incident constituted interference with any other Plaintiff's arrest. (See Opp'n at 17-19.)

To satisfy the elements of OGA, a Class A misdemeanor, "an individual must prevent or attempt to prevent a public official from performing a lawful official function by interfering with that function." Kass v. City of New York, 864 F.3d 200, 209 (2d Cir. 2017), cert. denied, 138 S. Ct. 487 (2017); see N.Y. Penal Law § 195.05. Such interference "must be . . . physical," beyond mere yelling. Basinski v. City of New York, 706 F. App'x 693, 697 (2d Cir. 2017).

18

However, physical interference can include "inappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved." Kass, 864 F.3d at 209-10 (citation and quotation marks omitted). This requirement "is satisfied when an individual intrudes himself into, or gets in the way of, an ongoing police activity," such as a lawful arrest. Id. at 210 (alterations adopted) (citations omitted).

i.   Kwane Greene

There was arguable probable cause to arrest Kwane Greene for OGA. If Kwane Greene physically obstructed Yasin Greene's lawful arrest,[11] there was probable cause to arrest him for OGA, and Plaintiffs' claim fails as a matter of law. It is undisputed that Kwane Greene was following Yasin Greene as the latter was being arrested; that Kwane Greene did not cross the street, despite Officer Xylas's request that he do so; and that he falsely told Officer Xylas that the reason he did not cross the street was that "he was going to the store." (Defs. 56.1 ¶¶ 51, 54, 56.) The video of the incident makes clear that, as Officer Xylas moves away from Kwane Greene, Kwane Greene tried to pass Officer Xylas and approach the car where Yasin Greene was being held, even after Officer Xylas made clear that he should not do so. (Video at 1:32; see Reply at 4-5; Video Screenshot (Dkt. 55-3).) In sum, there was arguable probable cause that Kwane Greene was "intrud[ing] himself into, or get[ting] in the way of, an ongoing police activity." Kass, 864 F.3d at 210. As it has been interpreted by the Second Circuit, the OGA statute gives police officers extremely broad discretion to make arrests in these circumstances. See Kass, 864 F.3d at 209-10 (stating that OGA extends to "inappropriate and disruptive conduct . . . even if

---

[11] Plaintiffs have abandoned their claim of false arrest as to Yasin Greene, and have therefore conceded that his arrest was lawful. (See Opp'n.)

there is no physical force involved," and includes situations where an individual intrudes himself

into, or gets in the way of, an ongoing police activity" (quotation marks and alterations omitted).)

Plaintiffs' arguments are unavailing. They address only the allegations against Kwane

Greene for disorderly conduct; however, the probable cause that Defendants point to concerns

Kwane Greene's arrest for OGA. (See Opp'n at 17.) Probable cause to arrest an individual

defeats a false arrest claim regardless of the offense to which the probable cause relates. Jaegly

v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). Further, contrary to Plaintiff's contention (see id.),

physical contact is not required in order to "interfere" within the meaning of New York OGA.

See Kass, 864 F.3d at 209-10. Thus, Kwane Greene's false arrest claim fails.

ii.   Messiah Greene

Additionally, there was arguable probable cause to arrest Messiah Greene for OGA.

Plaintiffs concede that Messiah Greene approached within feet of Kwane Greene while the

officers confronted Kwane Greene, and that Messiah Greene passed by Officer Julien to do so.

(Defs. 56.1 ¶¶ 52, 85; Pls. 56.1 ¶¶ 52, 85.) The video makes clear that Messiah Greene ignored

orders not to leave the yard and inserted himself directly between Officer Xylas and Kwane

Greene. (Video at 1:20-1:38.) Contrary to Plaintiff's contention (Opp'n at 18), it does not

matter whether the Officer Defendants had actually begun the process of arresting Kwane

Greene or were merely talking to him, because OGA does not require a lawful arrest to be taking

place; it only requires that a public official be "performing a lawful official function" with which

the defendant interferes. See Kass, 864 F.3d at 209-10. Police officers have very broad

discretion to make arrests under the OGA statute. See id. (stating that OGA extends to

"inappropriate and disruptive conduct . . . even if there is no physical force involved," and

includes situations where an individual intrudes himself into, or gets in the way of, an ongoing

police activity" (citations and quotation marks omitted)).  While the court has concerns about the way in which the Officer Defendants exercised their discretion in this instance, it is clear that the arrest of Messiah Greene was arguably within that discretion.  The officers are therefore entitled to qualified immunity on Messiah Greene's claim of false arrest.

### iii.   Anthony Greene

There was also arguable probable cause to arrest Anthony Greene for OGA.  The evidence indicates that when Anthony Greene grabbed Messiah Greene's shoulders while only one of Messiah's arms was handcuffed, he made it more difficult for Sergeant Powers to arrest Messiah. (Mem. at 13.)  This was arguably an attempt to interfere with an arrest, which is sufficient to satisfy the elements of OGA.  See N.Y. Penal Law § 195.05.  To the extent that Plaintiffs argue that the Officer Defendants used excessive force in arresting Anthony (Opp'n at 19), that does not bear on the false-arrest analysis.

### iv.   Blacksun Greene

There was not arguable probable cause to arrest Blacksun Greene for OGA.  Defendants rely primarily on the fact that Blacksun Greene came "within arm's reach of Sergeant Powers" while the latter was arresting Anthony Greene. (See Reply at 6.)  But Defendants have not alleged that Blacksun Greene placed himself between Sergeant Powers and Anthony Greene, or that he had physical contact of any kind with either individual.  Physical contact is not a necessary element of OGA, but there "must be a physical interference." Basinski, 706 F. App'x at 697 (quotation marks omitted).  Indeed, courts in this circuit have denied summary-judgment motions arising from OGA arrests where there was a dispute as to whether a plaintiff "placed himself physically between the police and the other person." Fana v. City of New York, No. 15-CV-8114 (PGG), 2018 WL 1581680, at *9-10 (S.D.N.Y. Mar. 27, 2018) (alterations adopted)

21

(quotation marks omitted); see Charles v. City of New York, No. 12-CV-6180, 2017 WL 530460, at *1 (E.D.N.Y. Feb. 8, 2017) (denying summary judgment where the plaintiff videotaped an arrest while asking questions); Dowling v. City of New York, No. 11-CV-4954 (NGG), 2013 WL 5502867, at *1 (E.D.N.Y. Sept. 30, 2013) (denying summary judgment where the plaintiff asked questions "ten feet away from the search").

Similarly, Blacksun Greene has been accused of nothing more than approaching the arresting officer and screaming at him. Defendants state plainly that Blacksun Greene "interfere[d]" (Defs. 56.1 at 20), but unlike with Anthony Greene, they do not allege that Blacksun Greene in any way "prevented the officers" from arresting anyone or even "caused it to take a while" for the officers to effect an arrest (id. ¶¶ 99, 101). Therefore, there was not even arguable probable cause to arrest Blacksun Greene for OGA. Blacksun Greene may have voiced his opinion about Anthony Greene's arrest, but he did not interfere with it. Defendants are therefore not entitled to summary judgment on Blacksun Greene's false-arrest claim.

b.   *False imprisonment*

Monifa Greene brings a claim of false imprisonment. (See Opp'n at 19-21.) "False arrest is a species of false imprisonment, so both claims are subject to the same legal analysis." Hargroves v. City of New York, 411 F. App'x 378, 382 n.3 (2d Cir. 2011) (citation and quotation marks omitted). Where there has been no formal arrest, a plaintiff must show that a police officer, "by means of physical force or show of authority, terminate[d] or restrain[ed] his freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007) (citations and quotation marks omitted)). In assessing this, a court must consider whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Brendlin, 551 U.S. at 255 (citation and quotation marks omitted).

22

Plaintiffs argue that Monifa Greene was seized because she did not wish to leave her house unattended while the Officer Defendants searched it. (Opp'n at 19-21.) She does not cite, and the court is not aware of, any authority for the proposition that this can constitute a Fourth Amendment seizure. Thus, Defendants are entitled to summary judgment on her claim.

### 3.   Malicious Prosecution

Anthony Greene brings claims of malicious prosecution based on four charges levied against him: (1) OGA, (2) resisting arrest,[12] (3) criminal possession of a firearm,[13] and (4) criminal possession of a weapon in the fourth degree.[14] (Defs. 56.1 ¶ 165; see Mem. at 16.) All charges were dismissed for speedy-trial reasons. (Defs. 56.1 ¶ 166.) Defendants argue that there was probable cause to prosecute Anthony Greene, so his malicious prosecution claims fail as a matter of law. (Mem. at 16-18.) For the following reasons, the court agrees and grants Defendants summary judgment on these claims.

"The elements of a malicious prosecution claim under section 1983 are derived from applicable state law." Swartz v. Insogna, 704 F.3d 105, 111 (2d Cir. 2013). These elements are: "(1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice." Id. at 111-12. In addition to the state-law elements, "to be actionable under section 1983 there must be a post-arraignment seizure." Id. at 112.

---

[12] N.Y. Penal Law § 205.30.

[13] N.Y. Penal Law § 265.01-b(1).

[14] N.Y. Penal Law § 265.01(1).

Although Plaintiffs have indisputably established the first two elements,[15] they have failed to show that there is a material dispute as to the third element, probable cause, with respect to any of the crimes with which Anthony Greene was charged.

### a. Obstruction of governmental administration

As explained above, Defendants are entitled to summary judgment on Anthony Greene's false arrest claim because there was probable cause to arrest him for OGA. Anthony Greene's malicious-prosecution claim as to that charge therefore also fails as a matter of law. See Swartz, 704 F.3d at 111-12 (stating that a lack of probable cause is an element of a malicious-prosecution claim). Nonetheless, because unlike with false arrest, "a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges," D'Angelo v. Kirschner, 288 F. App'x 724, 726 (2d Cir. 2008), the court will discuss the other crimes with which Anthony Greene was charged.

### b. Resisting arrest

Plaintiffs fail to respond to Defendants' argument that there was probable cause to charge Anthony Greene with resisting arrest. (Compare Mem. at 16-17, with Opp'n at 21-22.) The court therefore grants Defendants summary judgment on this issue. See Jackson, 766 F.3d at 196 (discussing partial abandonment of claims at the summary judgment stage).

### c. Weapons charges

Finally, the court finds that Defendants are entitled to summary judgment on Anthony Greene's claims of malicious prosecution as to the weapons charges (criminal possession of a firearm and criminal possession of a weapon in the fourth degree). Plaintiffs attempt to dispute

---

[15] There is no dispute that Anthony Greene was charged, and under New York law, "dismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused." See Murphy v. Lynn, 118 F.3d 938, 950 (2d Cir. 1997). Moreover, "[m]alice may be inferred . . . from the absence of probable cause." Dufort v. City of New York, 874 F.3d 338, 353 (2d Cir. 2017) (quotation marks omitted).

probable cause by pointing out that Anthony Greene was arrested before the officers uncovered the unlicensed firearm in his bedroom safe. (Opp'n at 23.) However, "[t]he existence or nonexistence of probable cause in a malicious prosecution suit . . . is determined, at the earliest, as of the time prosecution is commenced." Rothstein v. Carriere, 373 F.3d 275, 292 (2d Cir. 2004). Consequently, it is immaterial that the officers were unaware of the firearm's existence when Anthony Greene was arrested.

Plaintiffs now dispute that Anthony Greene constructively possessed the firearm. (Opp'n at 22-23.) However, Anthony Greene admitted the safe was his when he aided the officers in attempting to find the key. (Anthony Greene Dep. at 186:25-187:15.) And Plaintiffs have made no attempt to controvert Defendants' assertions in their 56.1 statement that the firearm belonged to Anthony Greene. (Compare Defs. 56.1 ¶¶ 155-58, with Pls. 56.1 ¶¶ 155-58 (conceding no genuine dispute of material fact).) See E.D.N.Y. Civ. R. 56.1(c) (Defendants' factual allegations "will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph"). Because there is no material dispute as to Anthony Greene's ownership of the firearm, Defendants are entitled to summary judgment on his claim of malicious prosecution.

### 4.   Excessive Force

All Plaintiffs apart from Yasin Greene bring claims of excessive force. Defendants assert qualified immunity and argue that, on the whole, Plaintiffs suffered only de minimis injuries. The court grants Defendants summary judgment as to Monifa, Kwane, Messiah, and Blacksun Greene, but denies summary judgment as to Anthony Greene's claim.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395

(1989) (emphasis omitted).  When evaluating a Fourth Amendment claim of excessive force, courts in this Circuit "consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014) (citation and quotation marks omitted).  Both the force used and the injury suffered must be more than de minimis to constitute excessive force.  For example, "as a matter of law, tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising."  Soliman v. City of New York, No. 15-CV-5310 (PKC), 2017 WL 1229730, at *16 (E.D.N.Y. Mar. 31, 2017) (quotation marks omitted) (emphasis omitted).  In general, "the lack of a continuing injury beyond temporary discomfort is fatal to an excessive force claim."  Milo v. City of New York, 59 F. Supp. 3d 513, 522 (E.D.N.Y. 2014) (quotation marks and alterations omitted).

### a.  Monifa, Kwane, and Messiah Greene

Three of the Plaintiffs, Monifa, Kwane, and Messiah Greene, allege either no injuries at all or merely de minimis injuries.  Their claims of excessive force fail as a matter of law.

Monifa Greene alleges no injuries arising out of her encounter with the officers, and Plaintiffs have admitted she experienced no "pain or injury as a result of allegedly being pushed."  (Compare Defs. 56.1 ¶ 44, with Pls. 56.1 ¶ 44.)  Courts have granted summary judgment on excessive force for more severe claims.  Absent even a de minimis assertion of injury or use of force, Defendants are entitled to summary judgment.  See Milo, 59 F. Supp. 3d at 522 ("Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, [and] claims of

26

minor discomfort from tight handcuffing.") (citing <u>Lemmo v. McKoy</u>, No. 08-CV-4264 (RJD), 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)).

Plaintiffs tie Kwane Greene's and Messiah Greene's excessive force claims to their false arrest claims. (<u>See</u> Opp'n at 24 (claiming excessive force because "there are issues of fact surrounding whether Kwane [and Messiah] actually interfer[ed]," <u>i.e.</u>, committed OGA).) As discussed above, however, the court finds that arguable probable cause existed with respect to their arrests. Further, as Defendants note (Reply at 9-10), Kwane Greene and Messiah Greene allege only <u>de minimis</u> injuries,[16] which cannot sustain a Fourth Amendment excessive force claim. See <u>Gutierrez v. City of New York</u>, No. 13-CV-3502 (JGK), 2015 WL 5559498, at *8; <u>see also</u> <u>Drummond v. Castro</u>, 522 F. Supp. 667, 679 (S.D.N.Y. 2007) ("[A] <u>de minimis</u> use of force will rarely suffice to state a constitutional claim." (quoting <u>Romano v. Howarth</u>, 998 F.2d 101, 105 (2d Cir. 1993))). Because Plaintiffs' and Defendants' differing versions of events do not "present factual issues as to the degree of force actually employed and its reasonableness" with respect to Kwane and Messiah Greene, there are no "facts in dispute that are material to a determination of reasonableness." <u>See</u> <u>Mills v. Fenger</u>, 216 F. App'x 7, 9 (2d Cir. 2006). Thus, summary judgment is appropriate.

### b. *Blacksun Greene*

Blacksun Greene, unlike Kwane and Messiah Greene, does not tie his excessive force claim to his false arrest claim. (<u>See</u> Opp'n at 26 ("[a]ssuming <u>arguendo</u> that the Defendant Officers had probable cause to arrest Blacksun"). Therefore, the validity or invalidity of Blacksun Greene's arrest is not dispositive here. However, Blacksun fails to materially dispute

---

[16] Officer Xylas shoved Kwane Greene against a car and Kwane Greene suffered soreness in his right arm that lasted for a day, but did not seek medical treatment. (Defs. 56.1 ¶¶ 63-70.) Sergeant Powers placed Messiah Greene in a chokehold, kicked his legs out, and slammed him to the ground. (Defs. 56.1 ¶ 87; Pls. 56.1 ¶ 87.) He suffered back pain, but did not seek medical treatment. (Defs. 56.1 ¶¶ 90-91.)

Defendants' assertion that Blacksun Greene suffered no physical injuries. (Compare Defs. 56.1 ¶ 133, with Pls. 56.1 ¶ 133.) Failure to allege anything beyond de minimis injuries is fatal to an excessive force claim. See Milo, 59 F. Supp. 3d at 522. Based on the undisputed facts, there is no dispute "as to the degree of force actually employed and its reasonableness." See Mills, 216 F. App'x at 9. The officers are therefore entitled to qualified immunity for force used against Blacksun Greene. See id.

### c.  Anthony Greene

Defendants maintain they are entitled to judgment as a matter of law for Sergeant Powers's repeated use of the taser on Anthony Greene. (Mem. at 22-24.) Anthony Greene was arrested for interfering with Messiah Greene's arrest, and according to Defendants, the use of force necessary to place Anthony in handcuffs was justified. (Id.) When the first use of the taser was ineffective, per Defendants, it was reasonable to deploy it two more times. (Reply at 11-12.) Plaintiffs respond that Anthony Greene's calm demeanor made the first use of the taser objectively unreasonable. Additionally, they dispute Defendants' assertion that the sergeant tased Anthony Greene for a second and third time only after attempting to place him in handcuffs a second time. Instead, Plaintiffs say Anthony Greene was repeatedly shocked on the ground as he convulsed and clutched his heart, and was only then handcuffed. (Pls. 56.1 ¶ 122.)

"Because whether force is excessive turns on its reasonableness," in the Second Circuit, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Mills, 216 F. App'x at 8-9 (alterations adopted) (citation and quotation marks omitted). Regardless of whether the initial use of the taser was reasonable (and there is certainly conflicting testimony on whether any instruction was given before Anthony Greene was tased (see Pls. 56.1 ¶¶ 121-22)), there is a

material dispute as to whether the Defendant Officers even attempted to handcuff Anthony

Greene before repeatedly shocking him again. The parties' disagreement is enough to overcome

the officer's qualified immunity and preclude summary judgment for Defendants on Anthony

Greene's excessive force claim.

### 5. Monell Liability

Plaintiffs seek to hold the City vicariously liable under Monell for all alleged

constitutional violations by the officers. (See Opp'n at 26-31.) Specifically, they aver that the

municipal policies tolerated by the City led to the violations they suffered. (Id.) Defendants

counter that because Monell requires a pattern of constitutional violations of which the City was

aware, the lack of evidence in the record of actual violations of constitutional rights entitles them

to judgment as a matter of law. (Reply at 12-14.) For the following reasons, the court finds that

Defendants are entitled to summary judgment on this issue.

### a.  Legal Standard

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action

pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. County

of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60

(2011)). The Supreme Court has recognized that failure by a city to train or supervise its

employees can create Monell liability. Connick, 563 U.S. at 61. For failure to train, a "pattern

of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate

deliberate indifference," id. at 62 (emphasis added), and the Second Circuit has applied the

pattern requirement in the context of failure to supervise as well, Cash, 654 F.3d at 336. "A

plaintiff cannot point to contemporaneous or subsequent violations to establish a pattern"; only

past violations are sufficient. See Greene v. City of New York, 742 F. App'x 532, 536-37 (2d

Cir. 2018) (quotation marks omitted). "Plaintiffs must prove in the end that the state defendants'

inadequate supervision actually caused or was the moving force behind the alleged violations."

Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007).

> b.  *Application*

As an initial matter, the City may only be held liable under Monell for actual

constitutional violations committed by the Officer Defendants.  "Monell does not provide a

separate cause of action."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Instead, "it extends liability to a municipal organization where that organization's failure to train,

or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Id.

In this case, the only § 1983 claims proceeding past summary judgment are those for (1)

unlawful search, (2) false arrest of Blacksun Greene, and (3) excessive force used against

Anthony Greene.  Plaintiffs' filings attempt to establish a pattern of constitutional violations only

as to excessive force by the officers (Am. Compl. at 9) and the NYPD's policy of handcuffing

and foot shackling hospitalized detainees (Opp'n at 28-30).  Although Plaintiffs state a claim of

excessive force sufficient to survive summary judgment, Plaintiffs did not plead or set forth

factual matter supporting the existence of a constitutional violation by the NYPD as to its

handcuffing policy.  Thus, the only issue before the court is whether the city may be held liable

for Anthony Greene's excessive force claim.

Plaintiffs rely on Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995), for the

proposition that Monell liability may be established where the City was "alerted to the possibility

of excessive force" by its officers.  (See Opp'n at 27.)  They cite to other federal lawsuits filed

against these officers and a news article discussing Officer Ettienne's social media presence.

(Id.)  In Vann, however, the City was aware of an "extensive history of disciplinary and other

remedial measures taken against" the defendant officer.  See Mahan v. City of New York, No.

00-CV-6645, 2005 WL 1677524, at *6 (E.D.N.Y. July 19, 2005) (discussing Vann). The

lawsuits cited here, and the City's failure to discipline the officers in connection with those suits,

are insufficient for Plaintiffs to survive summary judgment. Of fourteen lawsuits, thirteen were

settled without admission of liability[17] and one was dismissed with prejudice.[18] Nine of the

fourteen were filed after the date of the incident involving the Greenes, and therefore do not bear

on the question of whether the City was properly on notice of the officers' behavior. Among the

five pre-incident lawsuits, the only Defendants implicated are Officer Xylas (twice), Sergeant

Powers (twice), and Officer Galvin (thrice). Officers Julien and Ettienne had not been sued

before the incident. Therefore, to the extent that Plaintiffs' theory of Monell liability is based on

the City's alleged indifference to repeated lawsuits filed against the officers, Defendants are

entitled to summary judgment. The handful of allegations over a number of years, all of which

settled with no admission of liability, are insufficient to prove a pattern of violations. Cf. Jenkins

v. City of New York, No. 15-CV-5889, 2019 WL 2367060, at *5-6 (E.D.N.Y. June 5, 2019)

(seven pre-incident lawsuits all against the same defendant, alongside significant disciplinary

history, were sufficient to create a triable issue of material fact).

     Accordingly, summary judgment for Defendants is appropriate on Plaintiffs' Monell

claims.

---

[17] Braxton v. City of New York, No. 16-CV-5164 (E.D.N.Y. filed Sept. 16, 2016); Abram v. City of New York, No. 16-CV-5682 (S.D.N.Y. filed July 15, 2016); Fulmore v. City of New York, No. 16-CV-904 (E.D.N.Y. filed Feb. 23, 2016); Whitney v. City of New York, No. 15-CV-5176 (E.D.N.Y. filed Sept. 6, 2015); Clark v. Ettienne, No. 15-CV-4961 (E.D.N.Y. filed Aug. 24, 2015); Connor v. City of New York, No. 15-CV-2590 (E.D.N.Y. filed May 6, 2015); Baines v. City of New York, No. 15-CV-1472 (E.D.N.Y. filed Mar. 20, 2015); Julien v. City of New York, No. 14-CV-9942 (S.D.N.Y. Dec. 17, 2014); Jones v. Galvin, No. 14-CV-4095 (E.D.N.Y. filed July 1, 2014); Rouse v. City of New York, No. 13-CV-5984 (E.D.N.Y. filed Oct. 29, 2013); Ziegler v. City of New York, No. 13-CV-117 (E.D.N.Y. filed Jan. 8, 2013); Miller v. City of New York, No. 11-CV-5036 (E.D.N.Y. filed Oct. 17, 2011); Faine v. City of New York, No. 11-CV-3299 (E.D.N.Y. filed July 8, 2011).

[18] King v. City of New York, No. 15-CV-497 (E.D.N.Y. filed Feb. 2, 2015).

**B.      State Law Claims**

In addition to their § 1983 claims, Plaintiffs maintain five sets of New York state-law claims against the Defendants arising from the same incident.[19]  (Am. Compl. ¶¶ 74-111.) Defendants argue that they are entitled to qualified immunity and the New York State doctrine of governmental immunity.  (Mem. at 29-30.)  As set forth below, the court finds that Defendants are entitled to summary judgment on all of the state claims, except for Anthony and Blacksun Greene's assault and battery claims.

        1.      Assault and Battery

This court applies New York law to analyze Plaintiffs' state claims.  In New York, assault requires "proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact," Butler v. Magnet Sports & Ent. Lounge, Inc., 23 N.Y.S.3d 299, 301 (N.Y. App. Div. 2016), while battery requires offensive "bodily contact . . . [and] intent to make the contact without the plaintiff's consent," Relf v. City of Troy, 94 N.Y.S.3d 672, 677 (N.Y. App. Div. 2019).  When police officers exercise force, there are scenarios in which the elements of these torts are satisfied as a matter of law.  For example, "where an arrest is unlawful and without consent, the use of force in an arrest must give rise to a claim for assault and battery." Rucks v. City of New York, 96 F. Supp. 3d 138, 152-53 (S.D.N.Y. 2015) (emphasis in original); see Sulkowska v. City of New York, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001) (collecting cases).  The same is true for valid excessive force claims: "Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009) (alterations adopted).  Therefore, under New York law, if Plaintiffs have

---

[19] The court may exercise supplemental jurisdiction over any state-law claims that "form part of the same case or controversy" as Plaintiffs' federal claims.  See 28 U.S.C. § 1367(a).

stated valid claims of false arrest (which Blacksun Greene has) or excessive force (which Anthony Greene has), they also state claims for state law assault and battery. See Graham v. City of New York, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013) ("Since there are questions of fact regarding [the plaintiff's] excessive force claim, there are also questions of fact regarding [the plaintiff's] state law assault and battery claims against Defendant[s].").

Neither form of immunity claimed by Defendants operates to shield the officers from liability. The officers are not entitled to qualified immunity for the same reasons that the defense was unavailable to them on Blacksun Greene's false arrest claim and Anthony Greene's excessive force claim. Specifically, the absence of even arguable probable cause to arrest Blacksun Greene for OGA, as well as the "facts in dispute that are material to a determination of reasonableness" of the force used against Anthony Greene, preclude a grant of qualified immunity. See Mills, 216 F. App'x at 8-9. Nor can Defendants avail themselves of New York State governmental immunity. (See Mem. at 29-30.) In New York, the doctrine of governmental immunity "precludes liability for a mere error of judgment," provided "the action taken actually resulted from discretionary decision-making" by a municipal officer. Valdez v. City of New York, 960 N.E.2d 356, 364 (N.Y. 2011) (citations and quotation marks omitted). Governmental immunity applies "[w]hen a negligence claim is asserted against a municipality or its employees," Velez v. City of New York, 730 F.3d 128, 134 (2d Cir. 2013) (citing Valdez, 960 N.E.2d at 361), but does not shield officers from allegations of assault and battery, which are intentional torts. See, e.g., Bower v. City of Lockport, 982 N.Y.S.2d 621, 624-25 (N.Y. App. Div. 2014) (analyzing government immunity with regard only to negligence claims and not to assault and battery claims).

In sum, because there is a material dispute as to whether there was probable cause to arrest Blacksun Greene, under New York law Blacksun's assault and battery claim must survive summary judgment.

### 2.   Malicious Prosecution

Anthony Greene brings a state-law malicious prosecution claim. For malicious prosecution, "the analysis of the state and the federal claims is identical." Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).[20] To make out a malicious-prosecution claim, Plaintiffs must show a lack of probable cause. Because the court granted Defendants summary judgment on Anthony Greene's federal claim based on presence of probable cause, it does the same with respect to Anthony Greene's state malicious-prosecution claim.

### 3.   Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress ("IIED") are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Chanko v. American Broad. Cos., 49 N.E.3d 1171, 1178 (N.Y. 2016). As with assault and battery, because the conduct alleged is intentional (rather than merely negligent), Defendants are not entitled to state governmental immunity.

Plaintiffs' IIED claims fail. The claims are premised almost entirely on affidavits, newly submitted, claiming that each and every member of the Greene family fears to encounter police officers as a result of this incident. (See Opp'n at 32-33.) But Plaintiffs themselves admit that IIED "is a theory of recovery that is to be invoked only as a last resort," and one that requires

---

[20] Plaintiffs contend that "the elements of malicious prosecution under New York State law are actually less stringent than" those under § 1983. (Opp'n at 32.) They presumably refer to the Second Circuit's post-arraignment seizure requirement that is imposed on top of the state-law elements. Swartz, 704 F.3d at 112. That requirement is not disputed as to Anthony's claim, however, and is therefore not relevant. (See Opp'n at 21-23.)

behavior "beyond all possible bounds of decency." (Id. at 32 & n.8.) From all available evidence, the officers' conduct failed to rise to the high level of indecent behavior required to state a claim. Compare J.H. v. Bratton, 248 F. Supp. 3d 401, 416 (E.D.N.Y. 2017) (finding that the plaintiff stated a claim for IIED where officers "forced Plaintiff to remove her headscarf . . . despite Plaintiff's repeated objections on religious grounds, and then made sarcastic and demeaning comments about her physical features"), with Doe v. City of New York, No. 18-CV-670 (ARR), 2018 WL 3824133, at *10 (E.D.N.Y. Aug. 9, 2018) (dismissing IIED claim where officers "pressured, bullied, threatened and intimidated" plaintiff to prevent her from reporting a sexual assault, "[e]ven assuming that these statements were lies").

Finally, Plaintiffs' claim also fails because "the conduct complained of falls well within the ambit of other traditional tort liability." Turley v. ISG Lackawanna Inc., 774 F.3d 140, 157 (2d Cir. 2014) (explaining that New York courts tend to exclude IIED claims where other tort causes of action exist).

4.    Negligent Retention, Training, and Hiring

Plaintiff also brings a claim against the City for negligent retention, training, and hiring. (Am. Compl. ¶¶ 74-83.) The elements of negligent retention, training, and hiring are:

> (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels.

Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (citations and quotation marks omitted). Plaintiffs adduce no evidence tending to show that the City "knew or should have known" of the officers' alleged tendency to commit constitutional violations apart from the "plethora of civil rights actions commenced against them" (Opp'n at 33). As the court explained

35

above with respect to Plaintiffs' <u>Monell</u> claims, the five cases brought before the incident in question, over a four-year span, against only three of the Officer Defendants, are insufficient to have put the city on notice.

In any case, "[g]enerally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of <u>respondeat superior</u>, no claim may proceed against the employer for negligent hiring or retention." <u>Karoon v. New York City Transit Auth.</u>, 659 N.Y.S.2d 27, 29 (N.Y. App. Div. 1997). Here, there is no material dispute as to whether Defendants were acting within the scope of their employment. Defendants are therefore entitled to summary judgment on this claim.

        5.      <u>Respondeat Superior Liability</u>

Lastly, Plaintiffs seek to hold the City liable for the Officer Defendants' alleged intentional torts under a theory of <u>respondeat superior</u>. But "there can be no imposition of vicarious liability in the absence of underlying liability." <u>Rateau v. City of New York</u>, No. 06-CV-4751, 2009 WL 3148765, at *15 (E.D.N.Y. Sept. 29, 2009). Therefore, Plaintiffs' <u>respondeat superior</u> claims fail with respect to all state claims for which Defendants have been granted summary judgment—that is, all state claims apart from assault and battery as to Blacksun and Anthony Greene.

On the assault and battery claims, there is no reason why the parallel <u>respondeat superior</u> claims should not proceed past summary judgment. Defendants do not address Plaintiffs' assertions of <u>respondeat superior</u> liability in their summary judgment motion. (<u>See</u> Mem. at 26.) They have not argued that the officers were acting outside the scope of their employment or that their actions were not reasonably foreseeable, which are two exceptions to vicarious liability. <u>See</u> <u>Danko v. Forest Lake Camp, Inc.</u>, 882 N.Y.S.2d 280, 281-82 (N.Y. App. Div. 2009).

Accordingly, Plaintiffs' state-law claims that demonstrate triable issues of fact (assault and battery as to Blacksun and Anthony Greene) should proceed against both the Officer Defendants and, under a theory of respondeat superior, against the City.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 46) motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The following claims survive summary judgment: the 42 U.S.C. § 1983 claims for the (1) unlawful search of 377 MacDonough Street, (2) the false arrest of Blacksun Greene, and (3) the excessive force used against Anthony Greene; and the state-law claims for the (4) assault and battery of Blacksun and (5) assault and battery of Anthony.  The state claims survive against both the Officer Defendants and the City under respondeat superior.  The court DIRECTS the parties to contact the chambers of Magistrate Judge Cheryl L. Pollak to schedule a conference regarding the next steps in this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     August 5, 2019

NICHOLAS G. GARAUFIS
United States District Judge